UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

TRACEY L. MILLER,

Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

Defendant.

No. CV-05-0107-MWL

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-Motions for Summary Judgment, noted for hearing without oral argument on January 5, 2006. (Ct. Rec. 14, 16). Plaintiff Tracey L. Miller ("Plaintiff") filed a reply on December 1, 2005. (Ct. Rec. 18). Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Richard M. Rodriguez represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 3). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 16) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 14).

///

**JURISDICTION**

On August 31, 2000, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability since December 2, 1999, due to post traumatic stress disorder ("PTSD"), alcohol dependence, upper left leg and hip problems and other mental and physical impairments. (Administrative Record ("AR") 89-91, 101, 479-480). The applications were denied initially and on reconsideration.

On April 16, 2003, Plaintiff appeared before Administrative Law Judge ("ALJ") Mary B. Reed, at which time testimony was taken from Plaintiff, medical expert R. Thomas McKnight, Ph.D., and vocational expert Tom Moreland.[1] (AR 917-972). At that time, Plaintiff amended his alleged onset date to March 14, 2002. (AR 966). A second hearing was held on October 8, 2003, at which time testimony was taken from medical expert Arthur Craig, M.D., and vocational expert Debra LaPoint. (AR 973-988). Plaintiff did not appear at this hearing. (AR 973-988). On December 3, 2003, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 19-36). The Appeals Council denied a request for review on February 18, 2005. (AR 7-9). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). (Ct. Rec. 1).

---

[1] A hearing was scheduled for May 9, 2002, but Plaintiff did not appear, apparently because he was in jail when the notice of the hearing was mailed to him. (AR 87, 491). On July 8, 2002, the ALJ dismissed his request for a hearing due to his nonappearance, but the dismissal was subsequently vacated by the Appeals Council on December 6, 2002, and remanded to an ALJ for further proceedings. (AR 486, 493-495).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here. Plaintiff was 50 years old on the date of the ALJ's decision. (AR 20).

At the administrative hearing held on April 16, 2003, Plaintiff testified that the last time he used alcohol or street drugs was March of 2002. (AR 923). Prior to March of 2002, he stated that he would smoke cocaine whenever it was available and, when it was available, he would smoke whatever amount he had until it was gone. (AR 924). He indicated that it was possible that he was using $400.00 worth of cocaine a day, if he had that amount of money. (AR 925-926). To support his habit, Plaintiff stated that he also sold cocaine. (AR 925-926). He indicated that he had been selling cocaine, 12 hours a day, for maybe two or three years, making enough money to support a $400.00 a day cocaine habit. (AR 926).

Plaintiff testified that he completed the ninth grade in high school and obtained his GED while in the military. (AR 932). He went to the military, at age 15, as ordered by a court. (AR 932-933). He stated that he could not remember the last time he worked. (AR 933). He last worked temporary labor jobs involving digging and sweeping. (AR 933, 935). He worked as a mechanic in the military for two and one-half years and then worked as an aircraft mechanic for Boeing for four years. (AR 933-934, 957). He also performed commercial fishing and fish processing in Alaska, work as a gofer/stocker person at a hotel, and work in landscaping. (AR 934, 958-962). It was noted that Plaintiff had

worked, off and on, since December of 1999, his former alleged onset date. (AR 951). Plaintiff reported that what currently prevents him from working is a bad memory and an inability to be around people in a work environment. (AR 935).

Plaintiff testified that he has difficulty sleeping, for which he was taking medication, and sleeps maybe only one to two hours a night. (AR 935-936). He stated that he has problems with hearing voices daily, for which he also takes medication, and it inhibits his ability to concentrate. (AR 937). He indicated that he has trouble with his left hip stemming from a fall that occurred after being knocked unconscious while in prison. (AR 938). He reported severe stomach pain which resolved following surgery, but has been replaced by a new severe stomach pain. (AR 940). He also indicated that he has problems with headaches, two or three times a week, that last for hours. (AR 940-941). Plaintiff stated that he has ongoing problems with depression and anxiety, he has daily bouts of diarrhea and vomiting, and approximately two or three months prior to the hearing, Plaintiff was informed that he was HIV positive. (AR 939, 941-942). He additionally stated that he has been diagnosed with emphysema and hepatitis. (AR 947, 949).

Plaintiff testified that he is capable of taking care of all of his personal needs, like getting dressed and taking a shower, and can do housework. (AR 943-944). However, he does not go shopping or do his own laundry. (AR 944). Plaintiff reported that he did not engage in activities or other hobbies, other than watching a lot of television. (AR 944-945).

///

With regard to his hip pain, Plaintiff testified that he is supposed to use a cane, yet he forgot it at the time of the hearing. (AR 946). He stated that he could stand for up to an hour and walk up to a block. (AR 946-947). Plaintiff indicated that he has problems lifting and carrying due to torn muscles in his left shoulder and back. (AR 948). He stated that he therefore tries to just use his right side for lifting and carrying. (AR 949).

Plaintiff testified that he has had legal problems, his most recent being a driving on a suspended license for which he was going to have to spend six months on house arrest. (AR 953). He had also spent 90 days in jail the year prior to the hearing for felony escape and driving on a suspended license. (AR 954). He indicated that in July of 1999 he was incarcerated for drug dealing and spent 13 to 15 months in prison. (AR 963).

Plaintiff testified that he had not noticed any improvement in his symptoms since he had stopped using cocaine, and that his symptoms have actually gotten worse. (AR 964-965).

Medical expert R. Thomas McKnight, Ph.D., and vocational expert Tom Moreland testified at the administrative hearing held on April 16, 2003. (AR 927-932, 966-970). Medical expert Arthur Craig, M.D., and vocational expert Debra LaPoint testified at the administrative hearing held on October 8, 2003. (AR 973-988).

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed

impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past. If Plaintiff is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered. If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold

the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579

///

(9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, March 14, 2002. (AR 21). At step two, the ALJ determined that Plaintiff suffers from no severe medically determinable mental impairments, absent consideration of his substance addition disorder. (AR 29). It was noted that the Plaintiff's depressive disorder, not otherwise specified ("NOS"), and personality disorder, NOS, would cause no limitations on activities of daily living, social functioning, and concentration, persistence or pace, and no episodes of decompensation. (AR 29-30). The ALJ found that claimant does have the severe physical impairments of mild degenerative hip disease, a history of hepatitis C, is HIV positive, and has a substance addiction disorder, in alleged remission during the time at issue, but that he does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 30).

///

The ALJ concluded that Plaintiff has the RFC to perform a full range of light exertion work. (AR 33). At step four of the sequential evaluation process, the ALJ found that Plaintiff lacks the RFC to perform the exertional requirements of his past relevant work. (AR 33). However, the ALJ determined that, based on Plaintiff's RFC, age, education, and work experience, a finding that Plaintiff is "not disabled" is directed by the Medical-Vocational Guidelines ("Grids") rules 202.13, 202.14, 202.20 and 202.21. (AR 34). Accordingly, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 34-36).

## **ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, he argues that:

1. The ALJ erred by finding that Plaintiff did not have a severe mental impairment, absent consideration of his substance addiction disorder, during the relevant period; and

2. The ALJ erred by rejecting the opinions of examining and treating physicians in favor of the evaluation completed by Dr. Severinghaus.

This court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## **DISCUSSION**

### **A. Medical Professional Opinions**

Plaintiff contends that the ALJ erred by giving greater weight to the opinions of Dr. Severinghaus than to the opinions of

Drs. White and Peterson, Plaintiff's treating physicians at the VAMC, Katsuko Tanaka, ARNP, and Dr. Hellekson. (Ct. Rec. 15, pp. 11-17). The Commissioner responds that, the ALJ properly relied on the testimony of the medical experts and the findings of Dr. Severinghaus to find that Plaintiff could perform the full range of light work activity. (Ct. Rec. 17, pp. 13-18).

In a disability proceeding, the courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1996). A treating physician's opinion is given special weight because of his familiarity with Plaintiff and Plaintiff's physical condition. *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989). Thus, more weight is given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830. However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted). To reject the treating physician's opinion, the ALJ must state specific, legitimate reasons that are supported by substantial evidence. *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605. Historically, the courts of the Ninth Circuit have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports that are based substantially

///

on Plaintiff's subjective complaints of pain, as specific legitimate reasons for disregarding the treating physician's opinion. *Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604.

Katsuko Tanaka, ARNP, completed a psychological evaluation form on December 5, 2000. (AR 161-164). While the form indicated several mild, moderate and marked limitations and diagnosed Plaintiff with major depression, recurrent, PTSD, psychotic disorder, NOS, and cocaine dependence in early remission (AR 162-163), Katsuko Tanaka is neither a physician nor a licensed or certified psychologist. Therefore, the nurse practioner's opinions do not qualify as "medical evidence . . . from an acceptable medical source" as required by the Social Security regulations. 20 C.F.R. §§ 404.1513, 416.913. Moreover, as noted by the ALJ, Plaintiff told Ms. Tanaka, at the time of the evaluation, that he had not used alcohol or street drugs since September of 2000, yet, on November 27, 2000, a few days prior to Ms. Tanaka's evaluation, Plaintiff reported using alcohol the week before. (AR 23 n. 3).

Carla Hellekson, M.D., completed a psychiatric evaluation of Plaintiff on January 29, 2001. (AR 172-175). Dr. Hellekson reported that Plaintiff has used and abused alcohol from age 16 until his last reported use of one month prior to the exam. (AR 173). Plaintiff also indicated that he has used and abused cocaine from age 20 to one month prior to the exam. (AR 173). Plaintiff reported auditory hallucinations and recurrent suicidal ideation. (AR 173-174). Dr. Hellekson diagnosed psychotic disorder, NOS, polysubstance abuse, cocaine and alcohol, reported in early remission, posttraumatic stress disorder, and antisocial

personality disorder and gave Plaintiff a Global Assessment of Functioning ("GAF") score of 30.[2] Nevertheless, Dr. Hellekson opined that Plaintiff could still perform simple and repetitive tasks. (AR 175). In fact, it was reported that Plaintiff had been able to do day labor for Bekin Moving the week of his examination by Dr. Hellekson. (AR 175).

On November 20, 2001, David M. White, Ph.D., examined Plaintiff. (AR 644-653). Dr. White's report of May 7, 2002, indicated that although he felt that Plaintiff had psychiatric problems, he thought it was important for Plaintiff's substance usage to be evaluated to better understand the role this played in his overall psychiatric picture. (AR 644). Although Dr. White indicated he wanted to review the results of a substance abuse evaluation prior to writing a report, Plaintiff had not gone through such an evaluation at the time of the writing of Dr. White's report. (AR 644). Therefore, Dr. White's May 2002 report was based on information available to him in November of 2001. (AR 644).

Plaintiff reported that he last used cocaine two days before the evaluation and last drank alcohol three or four days prior to the evaluation. (AR 649). He stated that his longest period of abstinence from alcohol and other drugs was about six months in duration. (AR 649). Dr. White noted that, at the time of the evaluation, Plaintiff was using both alcohol and cocaine. (AR 651).

---

[2] A GAF of 30-21 is characterized as: "Behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 12 (3d ed. Rev. 1987).

Dr. White diagnosed psychotic disorder, NOS, posttraumatic stress disorder, major depressive disorder, recurrent, severe (at time of evaluation), alcohol abuse (at time of examination), cocaine abuse (at time of examination), and personality disorder, NOS, and gave Plaintiff a GAF score of 35.[3] (AR 652-653). Dr. White opined that Plaintiff was not capable of performing simple, repetitive tasks or more complex work duties on a full-time basis. (AR 652). He stated that Plaintiff suffers from "recurrent depression, posttraumatic stress disorder, and hallucinations and, probably, these would be present whether or not he was using alcohol or cocaine." (AR 652). Dr. White specifically indicated that he "was not able to determine to what extent his overall impairment was due to substance abuse versus other psychiatric problems." (AR 652).

The completed evaluations of Ms. Tanaka, Dr. Hellekson and Dr. White were months before the alleged onset date of March 14, 2002. The ALJ conceded that during the time period prior to March of 2002, Plaintiff's polysubstance addiction would have caused significant difficulties in work-related activities. (AR 32). However, during the relevant time period, the ALJ makes no such concession. Furthermore, as indicated in the evaluations, and by Plaintiff's own admission, he used cocaine and alcohol until March of 2002. (AR 923-924). Thus, the evaluations of Ms. Tanaka, Dr. Hellekson and Dr. White were completed during a time when Plaintiff was using alcohol and cocaine, rendering their

[3]A GAF of 40-31 indicates "[s]ome impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

observations and assessments of Plaintiff's abilities impacted by his substance abuse. It is significant to note that, whatever limitations Plaintiff may have alleged prior to March of 2002, Plaintiff was not prevented from selling cocaine, 12 hours a day, making enough money to support a $400.00 a day cocaine habit. (AR 925-926).

On July 19, 2002, Richard Peterson, Ph.D., completed a psychological/psychiatric evaluation form for Plaintiff. (AR 654-657). Dr. Peterson diagnosed Plaintiff with posttraumatic stress disorder, chronic, severe, cocaine dependence, chronic, in remission for six months and major depression, recurring. (AR 655). He checked boxes indicating that Plaintiff had a severe depressed mood, as well as several other marked and moderate limitations. (AR 654-656). Dr. Peterson marked a box indicating that the assessed cognitive limitations were not likely the result of alcohol or drug use and were not likely to dissipate within 60 days of sobriety. (AR 656). However, he did mark that mental health intervention was likely to restore or substantially improve Plaintiff's ability to work. (AR 657).

As noted by the ALJ, Dr. Peterson indicated that he was under the assumption that Plaintiff had not used drugs in the last six months; however, the record reveals ongoing cocaine use through March of 2002, less than six months prior to Dr. Peterson's evaluation. (AR 32). In addition, as noted by the Commissioner, the ALJ determined that Plaintiff was not credible. (AR 31). Plaintiff does not contest the ALJ's negative credibility finding in this case. (Ct. Rec. 15). Therefore, medical opinions based

///

primarily on Plaintiff's subjective complaints, like Dr. Peterson's report, are entitled to less weight. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of Plaintiff).

Plaintiff also makes a cursory argument that the ALJ erred by rejecting the opinions of Plaintiff's treating physicians at the VAMC. (Ct. Rec. 15, pp. 16-17). Plaintiff contends that the ALJ should have given greater weight to the opinions of Drs. Edwards and Cogswell as they were in the best position to assess Plaintiff's psychological limitations, even though they did not complete any personality or cognitive testing of Plaintiff. (Ct. Rec. 15, p. 17).

The ALJ notes that the assessments by the VA doctors relied on Plaintiff's self-reported difficulties. (AR 32). As previously noted, physicians' opinions may be disregarded when it is based on the properly rejected subjective complaints of Plaintiff. *Tonapetyan*, 242 F.3d at 1149. The ALJ also found that the VA doctors did not administer any personality or cognitive testing to assess Plaintiff's impairments and did not have available for review the assessments and testing of non-VA examiners. (AR 32). In addition, as noted by the Commissioner, the VA physicians repeatedly noted Plaintiff's continued use of drugs and alcohol at least through the amended onset date. (Ct. Rec. 17, p. 17).

At the April 16, 2003 administrative hearing, Thomas McKnight, Ph.D., testified as a medical expert. (AR 927-932). Dr. McKnight stated that several diagnoses had been presented,

including cocaine dependence, alcohol dependence, depressive disorder, NOS, post traumatic stress disorder, severe (but there was no documentation that anyone observed symptoms that are reasonably consistent with severe post traumatic stress disorder and it appeared to only be self-reported), bipolar disorder (although a person coming off of cocaine could exhibit symptoms of what would otherwise be a bipolar disorder), chronic manic-depressive, and major depression disorder. (AR 928-930). Dr. McKnight indicated that the problem with the various diagnoses throughout the record was that nobody had evaluated Plaintiff under circumstances where it was clear that he is not on drugs at the time of the evaluation. (AR 929). He stated that there is "no way to come to a reasonable diagnosis about this person without a thorough evaluation when he is documented to be free of drugs." (AR 929). Based on Dr. McKnight's testimony, the ALJ ordered an additional psychological evaluation. (AR 970).

By referral from the Department of Social Security/Disability Determination, consulting psychologist, John B. Severinghaus, Ph.D., examined Plaintiff on May 30, 2003. (AR 710-720). Drug testing the day of Dr. Severinghaus' examination was negative for alcohol and other street drugs. (AR 709). Plaintiff reported to Dr. Severinghaus that he began using cocaine 20 to 30 years ago and last used about one year ago. (AR 713). He indicated that he possibly inadvertently overdosed a few times, had been through five or six substance abuse treatments and had served 15 months on a three-year sentence at a penitentiary for delivery of cocaine. (AR 713).

///

Dr. Severinghaus indicated that the overall results of testing "strongly suggest lack of motivation and/or malingering, at least with regard to neuropsychological functioning, including memory." (AR 716). It was noted that, on the WMS-III, Plaintiff frequently missed what are normally quite easy items, on the WAIS-III, Plaintiff missed quite easy items early on the subtests, yet passed later items, his full scale IQ score was markedly below the estimated BETA IQ provided in the records from the Department of Corrections, and the MMPI-2 results indicated a high likelihood of profile invalidity. (AR 715-716). Based on the examination, Dr. Severinghaus diagnosed Plaintiff with cocaine dependence, in remission based on Plaintiff's self-report, a depressive disorder, NOS, provisional, an anxiety disorder, NOS, provisional, malingering, a personality disorder, NOS, with anti-social aspects, confirmed HIV positive status and other medical issues. (AR 716). Dr. Severinghaus opined that drug and alcohol abuse, particularly cocaine abuse, is the one psychiatric diagnosis which could be confidently offered. (AR 716). He indicated that, assuming no resumption of cocaine or other substance abuse, there are no clear indicators of gross deficiencies or limitations because of the likely malingered responses. (AR 716).

The ALJ assigned great weight to the opinion of Dr. Severinghaus to find that Plaintiff did not suffer from a severe medically determinable mental impairment, absent consideration of his substance addiction disorder. (AR 30). The ALJ noted that Dr. Severinghaus' examination was the most comprehensive of record, in that he administered a variety of tests, had available for review Plaintiff's medical records and therefore a

longitudinal history, and was able to evaluate Plaintiff when Plaintiff was clean and sober. (AR 30). The undersigned concurs with the ALJ's rationale for according Dr. Severinghaus' opinions great weight and finds that the ALJ reasonably relied upon Dr. Severinghaus' opinions in making her conclusions in this case. Moreover, the Court finds that the ALJ provided specific and legitimate reasons for rejecting the findings of Drs. White and Peterson and not according greater weight to the opinions of Ms. Tanaka, Dr. Hallekson, and the VA doctors. *See*, *supra*. Accordingly, the ALJ did not err, as alleged by Plaintiff, by rejecting the opinions of Plaintiff's examining and treating physicians in favor of the evaluation completed by Dr. Severinghaus in this case.

**B. Severe Mental Impairment**

Plaintiff contends that the ALJ erred by concluding that he did not have a severe mental impairment during the relevant time period. (Ct. Rec. 15, pp. 10-14). Plaintiff asserts that he provided ample evidence, consisting of signs, symptoms and laboratory findings, proving the existence of a severe mental impairment. (Ct. Rec. 15, p. 14). The Commissioner responds that the testimony of the medical experts and the consultative medical exam performed by Dr. Severinghaus provide substantial evidence to support the ALJ's finding that Plaintiff did not have a severe mental impairment during the relevant time period, absent the effects of drug addiction and/or alcoholism. (Ct. Rec. 17, pp. 6-19). The undersigned agrees.

The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities. An impairment is

considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. Plaintiff has the burden of proving that he has a severe impairment. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows that he is disabled. 20 C.F.R. § 416.912(a). In the absence of objective evidence to verify the existence of an impairment, the ALJ must reject the alleged impairment at step two of the sequential evaluation process. SSR 96-4p.

The ALJ evaluated the evidence of record, considered the hearing testimony of Plaintiff and the medical experts, and concluded that Plaintiff suffers from no severe medically determinable mental impairments, absent consideration of his substance addition disorder. (AR 29). The ALJ specifically found that Plaintiff has a depressive disorder, NOS, and a personality disorder, NOS, but that these impairments were not severe during the relevant time period. (AR 29). With regard to Plaintiff's mental limitations, the ALJ noted that, absent substance abuse, those mental impairments caused no limitations on activities of daily living, social functioning, and concentration, persistence or pace and caused no episodes of decompensation. (AR 29-30).

As noted in Section A, above, the ALJ did not err by according greater weight to the opinions of Dr. Severinghaus than to the opinions of other medical professionals of record. *Supra*. The weight of the record evidence, and, in particular, Dr. Severinghaus' evaluation, support the ALJ's finding that Plaintiff's mental impairments were not severe, absent consideration of his substance addition disorder. Plaintiff did

not meet his burden at step two of the sequential evaluation process to establish the existence of a severe mental impairment during the relevant time period. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.912. Accordingly, the ALJ's determination at step two is without error.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that Plaintiff is capable of performing work existing in sufficient numbers in the national economy, is supported by substantial evidence and free of legal error. Plaintiff is thus not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Ct. Rec. 14) is **DENIED**.

2. Defendant's Motion for Summary Judgment (Ct. Rec. 16) is **GRANTED**.

3. The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

**DATED** this 6th day of February, 2006.

s/Michael W. Leavitt
MICHAEL W. LEAVITT
UNITED STATES MAGISTRATE JUDGE